Ruffin, C. 3.
 

 The opinion of the court is, that the excess in the value of the slaves, over and above the money that was due to Lash and secured by the conveyance, was in •his hands assets for the satisfaction of debts, and that it remains so in the hands of the other defendants, the next of •kin, after re-embursing to them the money they have paid to Lash under the decree, and the costs incurred by them in establishing the true nature of the con veyance to Lash. — . 'The principle, upon which the proposition rests, is a very plain one. There was a right of redemption in Hauser, ■which was a valuable interest, and ought therefore to be applied to the benefit of -his creditors ; at least in a Court of
 
 *494
 
 Equity. Wentr. off, Ex’ors. 186. Against this, however, several objections were urged on the part of the defendants. But they all seem easily answered. One was, that the plaintiffs are concluded by the judgments on the administrator’s pleas of
 
 plena administravit
 
 in the suits at law, and that as these slaves were then held by the administrator, they are not assets, since come to hand. This objection rests on the assumption, that the intestate’s interest in the slaves could be reached at law, and might have been offered in evidence to disprove those pleas. Without deciding, whether, after such a judgment, assets strictly legal, which were in the administrator’s hands at the time and by him concealed from the creditors, could be reached in equity upon the subsequent discovery of them by the creditors, we hold that, in this case, the judgments at law do not conclude the plaintiffs, because these slaves were not
 
 recognized
 
 at Jaw as belonging to the intestate, but were deemed the legal property of I,ash himself, and so, were not assets in a court of law. Whether chattels conveyed by an instrument, which upon its face plainly
 
 shews they
 
 were
 
 mortgaged or
 
 pledged, can be in any case deemed legal assets, when the day of redemption had passed in the debtor’s life-time, we are not now called on to decide, though the authorities, as well as the reason of the thing, seem not to leave much doubt on the question. But certainly in no manner can a Court of Law hold that a chattel, conveyed absolutely by the deceased, remained his property for any purpose, unless, indeed, the creditor should establish that the conveyance was made to defeat creditors, and so was fraudulent and void under the statute. Neither party raises that point here, and we are to assume that, in respect to creditors at least, the transaction was fair. Being so, the interest of the intestate was a pure equity to have the conveyance, absolute in its terms, declared in that court to have been improperly obtained, or intended by the parties as a security, and that it should stand only as such. This interest was therefore equitable assets, and could not be taken notice of at law, and, as is admitted on all hands, was not then taken notice of. ■ Consequently the findings upon tbs
 
 *495
 
 administrator’s pleas do not affect the plaintiffs rights in this court in respect to those assets.
 

 It was next said, that the plaintiffs were not entitled to relief against the next of kin^rsi, because they had no equity to follow the assets into their hands, unless in a case of the insolvency of the administrator and- a fraudulent collusion between him and the next of kin ; and, secondly, because they were protected by the statutes of 1789 and 1715, barring actions against dead men’s representatives. As to the first, it is sufficient to say, that so far from this being a proceeding to follow the assets into the hands of the next of kin, it is one to obtain satisfaction out of the assets, before they should get into those hands. Perhaps the plaintiffs need not have'brought in the next of kin, and if they had supposed that, in the former litigation, the redemption had been shackled with the payment of too large a sum to Lash, they would probably have brought their bill against the administrator alone, to have the slaves declared equitable as-" sets in his hands. But as there is no suggestion of the kind, it was obviously the more fair course to bring in all the parties, and allow to the next of kin the benefit of the payment actually made or to be made by them for the redemption of the negroes, and for the costs of the loug controversy they had carried on for the purpose of establishing an interest in the intestate, of-which the creditors now claim the benefit. The next of kin did not demur because they were improperly made parties, nor state the objection in their answer. On the contrary, they got clear of an order in the cause, whereby the sheriff made a sequestration, took the slaves from the possession of Lash and prevented the next of kin from getting them, by voluntarily agreeing to perform the decrees in the cause, if the parties would allow them to take possession. It is plain that they cannot set up such a possession, as in itself defeating the creditor’s satisfaction out of that property. Perhaps, indeed, it was the fault of the court not to have directed in that cause an account of the intestate’s debts, before decreeing a distribution amongst the next of kin. Though not usual with us, it is the establish
 
 *496
 
 ed course in England, and under that decree the creditors prove their debts and receive payment out of the funds in court.
 
 Gillespie
 
 v Alexander,
 
 3 Russ. C.
 
 C. 130. That case also shews, that, after distribution by a decree, the creditors may bring back the estate by a suit against the next of kin, who, and not the administrator, is chargeable to the creditors in such case.
 
 A
 
 fortiori, when no account of the debts was directed in the suit by the next of kin, creditors may, upon a bill against all the parties, claim satisfaction out of the assets, while the fund is yet' in court or in the hands of the administrator, though ordered to be paid over to the next of kin for division among themselves.
 

 As for the lapse of time, there is nothing in it. The statutes bar if the creditors do not bring their actions. That was done here, and put an end to the operation of the acts. There is no presumption of payment upon such judgments, as these; especially it must be so held, when no such defence is set up. Therefore the plaintiffs are still entitled to have the fund administered in this court, as equitable assets of the intestate, and the necessary accounts of the clear amount of the fund and of the respective debts of the intestate must be taken.
 

 Per Curiam.-Decree accordingly.